Leonard New, et al.,

      Plaintiffs,        :

     v.              :      Case No.  2:07-cv-723

Captain John N. Perry, et al.,  :     Magistrate Judge Kemp

      Defendants.

## OPINION AND ORDER

     Leonard New and his mother, Janice New, brought this civil
rights action seeking money damages against several law
enforcement officers employed by the Gallia County Sheriff's
Department.  The matter is presently before the Court on the
motion for summary judgment filed by defendants Captain John
Perry, Detective Chad Wallace, Deputy Joseph Browning, Deputy
Nathan Harvey, and Lieutenant John Williams.  The News filed a
response in opposition to summary judgment.  On October 22, 2008,
the defendants replied.  For the following reasons, the
defendants' motion for summary judgment will be denied.

I.

     Summary judgment is not a substitute for a trial when
facts material to the Court's ultimate resolution of the case
are in dispute.  It may be rendered only when appropriate
evidentiary materials, as described in Fed. R. Civ. P. 56(c),
demonstrate the absence of a material factual dispute and the
moving party is entitled to judgment as a matter of law.
Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464
(1962).  The moving party bears the burden of demonstrating
that no material facts are in dispute, and the evidence
submitted must be viewed in the light most favorable to the

nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654 (1962).  The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.  It is with these standards in mind that the motion for summary judgment will be decided.

II.

The following facts are not in dispute.  On July 28, 2005, Mr. New appeared at the Gallia County Jail to retrieve personal property that had previously been confiscated and was in the custody of the Gallia County Sheriff's Department.  While at the jail, Mr. New was approached by Detective Wallace and Captain Perry (now Major Perry) and asked to provide his palm prints.  Mr. New told them he would need to let his mother know that he would be delayed a few minutes since she had driven him to the jail and was waiting outside in her car.  The plaintiffs then proceeded to the offices of Mr. New's attorney where they were informed that the criminal charges pending against Mr. New had

2

been dismissed.  Detective Wallace admitted that he understood part of the reason for the dismissal of these charges was his earlier failure to obtain Mr. New's palm prints while he was in custody despite the prosecuting attorney's request.

After leaving the attorney's office, both Mr. New and his mother returned to the public waiting area of the jail.  They were also accompanied by Mr. New's young niece.  Detective Wallace and Captain Perry informed Mr. New that he needed to provide his palm prints.  Mr. New refused on the basis that his attorney had advised him that he no longer had to comply in light of the dismissal of all charges.  A loud argument ensued.  During this exchange, Captain Perry repeatedly ordered Ms. New to leave. When she failed to do so willingly, Captain Perry physically removed her from the waiting area.

Mr. New was led back to the laboratory.  Deputy Harvey came to the lab with the equipment needed to take Mr. New's palm prints.  Lieutenant Williams, Captain Perry, and Detective Wallace were also present at the lab.  Mr. New resisted their efforts to take his palm prints.  The officers responded by using force to restrain and handcuff Mr. New.  Captain Perry informed Mr. New he was under arrest.  Mr. New was placed behind bars and charged with obstructing official business and resisting arrest. After Mr. New was placed in a cell, the officers uncuffed him, and Deputy Harvey took his palm prints.  The charges of obstructing official business and resisting arrest were later dropped.

At the time these events took place, Mr. New was on probation or community control for a prior offense.  One of the conditions of his status required him "to submit to a search of [his] person, vehicle, or place of residence by any community control officer or law enforcement officer with or without probable cause while on community control."  The defendants,

however, were unaware Mr. New was on probation and did not rely on this fact when they ordered him to submit to the taking of his palm prints.

III.

This case was filed under 42 U.S.C. §1983, the statute which creates a cause of action against any person who acts, under color of state law, to deprive another of the rights, privileges, or immunities secured by the Constitution or laws of the United States. Mr. New and his mother allege that the defendants' actions violated their rights under the Fourth and Fourteenth Amendments by subjecting them to unreasonable searches and seizures, false arrest, excessive force, and false imprisonment. In addition, Ms. New claims that Captain Perry deprived her of her First Amendment rights to assemble peacefully and to petition the government for redress.

Defendants have moved for summary judgment on all claims. However, there are some procedural matters that need to be identified in order to put the motion into proper context.

First, the motion itself does not address either of the two primary issues in this case: whether the News' First, Fourth and Fourteenth Amendments were violated, and, if so whether the individual defendants are immune from a suit for money damages based on the qualified immunity which is available to defendants sued in their individual capacities. <u>See</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982). These issues (with the exception of Ms. New's First Amendment claim, which defendants do not address at all) are raised for the first time in the reply memorandum. It is the ordinary practice of this Court not to decide issues that are presented for the first time in a reply brief, because the Local Civil Rules do not contemplate that responses to reply briefs be filed, and because it is usually both unfair and unwise to decide a case based on arguments on which one side has not had a full and fair opportunity to be heard.

4

The Court will address these issues in this Opinion and Order, however, for the following reasons. First, the News' response to the summary judgment motion presents their arguments on their Fourth and Fourteenth Amendment claims, so they have been heard on those issues. Second, although the issue of whether a particular use of force is reasonable under the Fourth Amendment's "objectively reasonable" standard is conceptually different from the issue of whether a reasonable police officer would have known that he or she employed an unreasonable amount of force to effect the seizure of a person, see Saucier v. Katz, 533 U.S. 194 (2001), the two issues are closely related and the analysis of each is similar. Further, there is some support in decisions from the Court of Appeals for considering qualified immunity even if the issue is raised in a procedurally improper manner. See Crockett v. Cumberland College, 316 F.3d 571, 577-78 (6th Cir. 2003); Klein v. Long, 275 F.3d 544, 548-49 (6th Cir. 2001). Finally, because the Court is resolving these issues against the defendants, the News will not be prejudiced by the Court's consideration of them. The Court will therefore turn to its analysis of the substantive constitutional issues arising under the Fourth and Fourteenth Amendments and to the issue of qualified immunity.

IV.

Both of the plaintiffs claim that the defendants violated their rights to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution. That Fourth Amendment protection has been incorporated into the Due Process Clause of the Fourteenth Amendment and thereby made applicable to the States. See Wolf v. Colorado, 338 U.S. 25 (1949), overruled on other grounds, Mapp v. Ohio, 367 U.S. 643 (U.S. 1961). It is unclear whether the News are asserting an independent claim under the Fourteenth Amendment for alleged violation of their substantive due process rights,

but any such claim would be foreclosed here.   <u>See</u> <u>Allbright v.</u>
<u>Oliver</u>, 510 U.S. 266, 273-74 (1994)(arrest without probable cause
not violation of substantive due process; any constitutional
violation must arise from Fourth Amendment freedom from
unreasonable seizure); <u>Graham v. Connor</u>, 490 U.S. 386, 395
(1989)(excessive force claim analyzed under Fourth Amendment's
reasonableness standard rather than under due process approach).
The defendants dispute that any Fourth Amendment violation
occurred, and, as noted above, they assert that even if they
violated either Leonard or Janice New's rights, they are immune
from suit based on the qualified immunity doctrine.   Before
beginning the analysis of the Fourth Amendment claims, the Court
will discuss both the qualified immunity doctrine and explain why
the Court has chosen to examine the merits of the Fourth
Amendment claims before addressing the qualified immunity issue.

A.   <u>Order of Decisionmaking</u>

The doctrine of qualified immunity provides that "government
officials performing discretionary functions generally are
shielded from liability for civil damages insofar as their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known." <u>Harlow v. Fitzgerald</u>, 457 U.S. at 818.   The Sixth
Circuit has traditionally analyzed claims of qualified immunity
under a three-part test.   This test requires the Court to
determine (1) whether a constitutional right was violated; (2)
whether that right was clearly established such that a reasonable
official would know that his conduct was unlawful; and (3)
whether the official's actions were objectively reasonable under
the circumstances.   <u>Vance v. Wade</u>, 546 F.3d 774, 782 (6th Cir.
2008).

This framework has sometimes been condensed to two
questions.   <u>See</u> <u>Nader v. Blackwell</u>, 545 F.3d 459, 473 (6th Cir.

2008).  First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?"  <u>Saucier</u>, 533 U.S. at 201.  If not, the Court need go no further.  <u>Id</u>.; <u>see also</u> <u>Bukowski v. City of Akron</u>, 326 F.3d 702, 708 (6th Cir. 2003).  However, if a constitutional violation has occurred the Court must next answer the second question, which is whether the right was clearly established.  <u>Saucier</u>.  "[W]hether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  <u>Id</u>. at 202.

Although <u>Saucier</u> also held that the questions must be decided in this exact order, the Supreme Court recently retreated from that requirement and now allows the lower courts to decide the questions is either order.  <u>See</u> <u>Pearson v. Callahan</u>, 129 S.Ct. 808, 821 (2009) ("the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking [which] will best facilitate the fair and efficient disposition of each case") .  However, the Supreme Court recognized that this framework will often continue to be beneficial in many cases involving qualified immunity.  <u>Id</u>. at 818.  Here, the Court sees no reason to depart from the traditional approach.  Accordingly, the Court will first turn to whether the facts, as alleged by the plaintiffs and taken in the light most favorable to them, show that one or more of the defendants violated a right protected by the Fourth Amendment.

### B. Janice New's Excessive Force Claims

Ms. New's sole Fourth Amendment claim is based on the fact that after she suggested that the officers talk to her son's attorney, Captain Perry grabbed her and pushed her against the wall and then shoved her out the door.  Ms. New was left with red marks on her arm, but did not require medical treatment.  She has

also suffered migraines, chest pain, shoulder pain, tightness in her arm, vomiting, aggravation of her TMJ, and other stress-induced conditions which she attributes to these events. She claims that, as a consequence, she has had use up her sick days and personal days at her teaching job.

The Fourth Amendment is generally limited to protecting persons from unreasonable searches and seizures. That is clear from the language of the amendment itself, which reads, in part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Consequently, the Fourth Amendment "is not a guarantee against unreasonable or outrageous official conduct generally." Ewolski v. City of Brunswick, 287 F.3d 492, 505 (6th Cir. 2002).

To assert a successful excessive force claim under the Fourth Amendment, a plaintiff must first show that a seizure occurred. Id. at 506. Not every encounter between an officer and a citizen is a seizure. The officer must, by physical force or show of authority, restrain the citizen's liberty in some way. See Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). For Fourth Amendment purposes, a seizure occurs when a reasonable person believes that he or she is not free simply to walk away from an encounter with the police, see United States v. Mendenhall, 446 U.S. 544, 554 (1980), or when there has been "a governmental termination of freedom of movement," see Brower v. County of Inyo, 489 U.S. 593, 597 (1989).

Ms. New does not allege that she was not free to leave the jail, so a typical arrest or detention seizure did not occur. However, she does allege that her freedom of movement was restrained when Captain Perry forcibly removed her from the public waiting room. She testified that he took her by the arm and shoved her outside, closing a wooden door behind her and

separating her from both her son and granddaughter.

Defendants have not argued that this act of grabbing Ms. New by the arm and forcibly moving her to a different part of the building was not a seizure within the meaning of the Fourth Amendment. Rather, their entire argument as to her Fourth Amendment claim is that they were justified in using whatever force was needed to remove her because she had made a "decision to inject herself into police business" and that her actions "constitute[d] an interference with officers lawfully performing their duties." Defendants' Motion for Summary Judgment, Doc. #16, at 10; Defendants' reply memorandum, Doc. #25, at 8.

The case is not, as demonstrated below, quite that simple. Although police officers possess the power forcibly to remove people from an area where police business is being conducted, that power must be exercised in a reasonable fashion. In other words, the circumstances must demonstrate - and, in the context of a summary judgment motion, demonstrate conclusively - that the action of removing someone from an area by force was reasonably necessary in order for the police to conduct their business, and that the amount of force used to do so was reasonable under all of the circumstances.

According to both Janice and Leonard New, Ms. New was in a public area, and actually holding her granddaughter in her arms, when this incident began. She had done nothing more than advise officers, apparently truthfully, that Mr. New's attorney had said that Mr. New did not have to provide the palm prints, and suggest that if they called the attorney to come over, the matter might get resolved. She had taken no steps to interfere physically with the officers' efforts to force Mr. New to give his prints; in fact, those efforts had not yet begun when Captain Perry grabbed her (after she put her granddaughter down) and forced her out the door. Mr. New was then taken to a different room in

9

order to have his palm prints taken, so the officers' efforts to get him to submit to the printing did not even occur in the same waiting room from which Ms. New had been removed. Under this version of events, a reasonable jury could conclude that there was no need to evict Ms. New from the public waiting area and that any use of force to do so was therefore both unnecessary and excessive. <u>See, e.g.</u>, <u>Eisnnicher v. Bob Evans Farms Restaurant</u>, 310 F.Supp.2d 936, 953 (S.D. Ohio 2004) (use of force to restrain a bystander at a crime scene "could only be justified by the need to assure the safety of officers and others"). This factual issue precludes summary judgment on the Fourth Amendment claim.

Defendants have presented no cogent argument in support of their assertion of qualified immunity on this claim other than to state that "[t]he conduct of the officers was reasonable under the circumstances." Reply Memorandum at 9. They have not presented any separate analysis of the question of whether they could reasonably have believed that the forceful ejection of Ms. New from the area was justified, even if it turns out that the circumstances did not support a use of force against her. Given the fact that they have apparently collapsed the two issues into the single question of whether their acts were reasonable, and given the fact that the Court has found this question to be reasonably debatable, the Court cannot grant qualified immunity to the defendants on this issue.

### C. Leonard New's Fourth Amendment Seizure Claim

Mr. New alleges that the defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures when they attempted to compel the taking of his palm prints. In their motion for summary judgment, the defendants contend that because Mr. New was on probation at the time, he was required to comply with their request. They expand this argument in their reply memorandum to assert that because Mr. New was a

suspect in an ongoing criminal investigation, he was required to submit his palm prints regardless of his probation status. In addition, detective Wallace testified that he believed based on his prior discussions with Mr. New's attorney that the attorney had no objection to the taking of palm prints and had indicated that he (the attorney) need not be present when the prints were taken.

It is clear that no judge had issued a warrant authorizing the defendants forcibly to take palm prints from Mr. New. Additionally, there was no court order to that effect. At the time that Mr. New was forcibly restrained for the purposes of getting his palm prints, there were no criminal charges pending against him. Thus, the question raised by his complaint about the defendants' actions in forcing him to another room in the jail, and using force to remove his hands from his pockets, is under what circumstances, if any, and in the absence of a warrant or a court order, the police may use force to compel a person to undergo a palm printing process if that person will not do so willingly.

In Davis v. Mississippi, 394 U.S. 721 (1969), the Supreme Court held that the investigative detention of a person for fingerprinting purposes is subject to the constraints of the Fourth Amendment. In the absence of probable cause or judicial authorization, such detention is an unreasonable seizure under the Fourth Amendment. Id. at 727. The court left open the possibility that under narrowly prescribed procedures not present in Davis, a detention for fingerprinting might be allowed on less than probable cause, i.e. reasonable suspicion. Id. at 728. In 1985, the Supreme Court reaffirmed its holding in Davis. See Hayes v. Florida, 470 U.S. 811 (1985). The court's view continues to be that the full protection of the Fourth Amendment is triggered "when the police, without probable cause or a

warrant, forcibly remove a person from his home <u>or other place in</u> <u>which he is entitled to be</u> and transport him to the police station, where he is detained, however briefly, for investigative purposes." <u>Id</u>. at 816 (emphasis added). The court added that "[n]one of the foregoing implies that a brief detention <u>in the</u> <u>field</u> for the purpose of fingerprinting, where there is only reasonable suspicion not amounting to probable cause, is necessarily impermissible under the Fourth Amendment." <u>Id</u>. (emphasis added). This exception would appear to apply, however, only in circumstances where the identity of the suspect is not known, so that the fingerprinting would be the equivalent of a <u>Terry</u> stop during which the person is asked for identification, or where the procedure can be "carried out with dispatch" and "there is a reasonable basis for believing that fingerprinting will establish or negate the suspect's connection with th[e] crime...." <u>Id</u>. at 817.

The facts of this case do not even remotely resemble the type of investigative stop that is authorized to be conducted without probable cause or a warrant under <u>Terry v. Ohio</u>. The crime that Mr. New was suspected of having committed had not just occurred, and the police were not in the process of investigating it in the field and attempting to determine if they had a viable suspect to arrest. Rather, Mr. New had already been arrested on the charge and had spent about a month in jail after that arrest. Whatever exigencies justify a relaxation of the Fourth Amendment when officers are conducting a field investigation and need briefly to detain potential suspects for purposes of identifying and questioning them had long since evaporated here. <u>Cf</u>. <u>Terry</u>, 392 U.S. at 10, 20 (issue is when reasonable suspicion justifies brief investigatory stop when police are "dealing with the rapidly unfolding and often dangerous situations on city streets" and in the context of "necessarily swift action predicated upon

12

the on-the-spot observations of the officer on the beat ...").
The court recognized that, in those situations, it was simply not
possible or practical to wait for a warrant before briefly
detaining and questioning persons who could reasonably be viewed
as suspects. Here, a warrant or order could have been obtained
at any time after Mr. New's initial arrest, so there was and is
no justification for relaxing the requirements of the Fourth
Amendment that this type of search and seizure be preceded by the
establishment of probable cause to the satisfaction of a neutral
and detached judicial officer and the issuance of a warrant or
order for the procedure to take place.

It makes no difference that Mr. New voluntarily entered the
police station before the seizure occurred. He came there not to
submit consensually to a search and seizure, but to retrieve his
property. When Captain Perry and Detective Wallace first seized
Mr. New, he was in the public waiting area, a place he was
entitled to be. From there, they forcibly transported him to the
lab and then to the jail. That is a classic Fourth Amendment
seizure, and their efforts to force him to submit to a palm print
procedure is a classic Fourth Amendment search. The warrantless
nature of this search and seizure therefore violated the Fourth
Amendment unless some recognized exception applies.

One of the exceptions that defendants appear to argue is
that Mr. New's attorney had authorized the search. This argument
carries little weight. The facts suggest that any such
authorization was given during the pendency of the criminal case,
and that the attorney had given different advice once the charges
were dismissed. The officers were told as much on the day of the
search. Even if they harbored some doubt about whether that was
true, any authority that the attorney had to consent to the palm
print procedure derived solely from his status as agent for Mr.
New. Once Mr. New, the principal in that relationship, clearly

revoked any prior consent - and his words and actions on the day of the search certainly could be seen that way - any prior act of the agent becomes a nullity.  At the very least, there is a material factual issue about whether the search and seizure occurred pursuant to a valid consent.

The other argument advanced by defendants is that Mr. New had no right to refuse the search because of his status as a probationer or parolee.  For the following reasons, the Court concludes that this argument also lacks merit.

The Supreme Court has recognized that probationers or parolees are entitled to fewer protections under the Fourth Amendment than citizens who are not subject to any type of governmentally-imposed restrictions on their liberty.  In United States v. Knights, 534 U.S. 112, 118-19 (2001), the court considered a Fourth Amendment claim advanced by a defendant who was on probation for a drug offense.  The order of probation required him to submit his person, vehicle, and residence to search at any time with or without a warrant or reasonable cause by any probation officer or law enforcement officer.  Knights signed a statement acknowledging his understanding of that condition.  534 U.S. at 114.  Knights subsequently became a suspect in several acts of vandalism, including arson, against facilities owned by his former employee.  After observing a number of suspicious objects in a truck parked in the defendant's driveway, a sheriff's detective decided to search the defendant's apartment.  The detective was aware of Knights' probation status and the provision in the court order permitting such a search without a warrant.  The warrantless search revealed substantial incriminating evidence, and Knights was arrested and eventually indicted for conspiracy to commit arson and other felonies.  Id. at 115-16.

The Supreme Court observed that by virtue of his status as a

probationer, Knights' expectation of privacy was considerably
less than that of a law-abiding citizen.  Id. at 119.  The court
also pointed out California's legitimate governmental interests
in integrating probationers back into their community and
fighting recidivism.  Id. at 120-21.  A balancing of the
probationer's diminished privacy expectation and the State's dual
interests calls for something less than the probable cause
standard ordinarily required by the Fourth Amendment.  Id. at
121.  Under those circumstances, a reasonable suspicion by the
officer is enough to render a warrant requirement unnecessary.
Id.

In Samson v. California, 547 U.S. 843 (2006), the Supreme
Court reached the question left unanswered by Knights: whether
the search would have been reasonable under the Fourth Amendment
absent the officer's reasonable suspicion and based only on the
condition of probation.  547 U.S. at 850.  The defendant in
Samson was a parolee rather than a probationer, and the court
explicitly recognized that "parolees enjoy even less of the
average citizen's absolute liberty than do probationers" and that
their status is more akin to prisoners.  Id.(quoting United
States v. Cardona, 903 F.2d 60, 63 (9th Cir. 1990)).  Furthermore,
the general conditions of parole in California require parolees
to submit to suspicionless searches by parole officers or other
peace officers at any time.  Id.  This condition was arguably
even more stringent than the court order in Knights.  Based on
the totality of circumstances surrounding Samson's status as a
parolee, including the apparent terms of the applicable search
condition, the court concluded that the petitioner had no
legitimate expectation of privacy.  Id at 852.  Thus, the
officer's search of Samson's person predicated  on the parole
search condition and the officer's knowledge of his parole
status, and not on reasonable suspicion, was reasonable under the

Fourth Amendment. The court specifically noted that, under California precedent, an officer who conducts a suspicionless search, absent awareness that the person he searches is a parolee, would not act reasonably. <u>Id</u>. at 856 n.5.

Neither <u>Knights</u> nor <u>Samson</u> directly address the question of whether a search of a probationer or parolee which is conducted by officers who do not know that the person being searched in on probation or parole must be supported by more traditional Fourth Amendment justifications. Both of those cases involved searches that the officers believed to be lawful based upon the fact that the subject of the search enjoyed a lessened expectation of privacy due to probation or parole conditions. Here, Mr. New was not seized or searched based upon his status as someone under judicial supervision, and the officers apparently did not learn until later that he held that status. Nevertheless, they argue that anyone under probation or parole can be searched without probable cause even if the officers performing the search do not do so pursuant to the probation or parole conditions that might allow the search.

However, the California Supreme Court had addressed that situation before <u>Samson</u>, holding that an otherwise unlawful search of an adult parolee cannot be validated by the mere fact that the person is on parole. <u>See</u> <u>People v. Sanders</u>, 31 Cal.4th 318, 332, 73 P.3d 496, 505 (2003). Rather, "such a search cannot be justified as a parole search, because the officer is not acting pursuant to the conditions of parole." <u>Id</u>., 73 P.2d at 506. The court reaffirmed this holding after <u>Samson</u>, noting that an otherwise unlawful search (this time of a juvenile who was on probation) "may not be justified by a parole search condition of which the law enforcement officers were unaware when the search was conducted." <u>In re Jaime P.</u>, 40 Cal.4th 128, 146 P.3d 965 (2006). In addition, the Ninth Circuit Court of Appeals has

16

recently held that a search condition required of California parolees can validate a search otherwise unreasonable under the Fourth Amendment only if police had prior knowledge of the search condition before they conducted the search.  United States v. Caseres, 533 F.3d 1064, 1075-76 (9th 2008).

These authorities persuade this Court to conclude that the search condition found in Mr. New's order of probation did not justify the defendants' efforts to obtain his palm prints given the fact that they were unaware of Mr. New's probation status or the search condition as of July 28, 2005.  Thus, for this search to have been reasonable under the Fourth Amendment, there must have been some level of legal justification for the officers forcibly to detain Mr. New in order to take his palm prints, and to force him to undergo that procedure.  The above discussion demonstrates that such legal justification, in the form of a warrant based on probable cause, was absent.  Thus, assuming that the facts testified to by the News are true, the defendants violated the Fourth Amendment when they used force to seize Mr. New for the purposes of trying to obtain his palm prints, and when they used force to coerce him to submit to that procedure.

Having found a potential Fourth Amendment violation here, the Court must next determine if reasonable officers in the position of the defendants could reasonably have been expected to know that their actions violated clearly established law.  It is worth noting that, given the fact that the requirements of probable cause and a warrant for searches and seizures appear in the text of the Fourth Amendment itself and that the Supreme Court has stressed time and time again that those requirements apply unless the courts have created an exception, if no exception or reasonable expectation of an exception can be identified here, there is no qualified immunity.  In other words, "[a]bsent any support for ... an exception in [the Supreme

Court's] cases, [a police officer] cannot reasonably have relied on an expectation that" the court would create such an exception. <u>Groh v. Ramirez</u>, 540 U.S. 551 (2004) (denying qualified immunity to officer who prepared and executed warrant that did not meet the Fourth Amendment's specificity requirement).

First, the defendants could not reasonably have expected the probationer or parolee exception to apply here, because they were unaware of those facts at the time they seized and attempted to search Mr. New. Second, they could not have reasonably believed that they were conducting the sort of investigative search and seizure authorized by <u>Terry v. Ohio</u> because this was not a street-level encounter with a potential suspect where compliance with more formal procedures is simply unworkable. To hold otherwise would be to place a stamp of reasonableness on the police's ability to require any citizen whose identity is already known, whose connection to some past crime is already suspected, and who voluntarily presents himself or herself at police headquarters for an unrelated purpose, to force that person to submit to a search and seizure of his or her person without a warrant or a court order. Even if the intrusion is relatively minimal - such as a brief detention for the purposes of taking fingerprints - the <u>Davis</u> and <u>Hayes</u> decisions teach that the Fourth Amendment applies to this type of investigative procedure. Consequently, the Court concludes that a reasonable officer in the position of the defendants would not have thought the detention and coercion applied to Mr. New (at least as he and his mother described it) in order to get his palm prints was permitted by the Fourth Amendment.

### D. Leonard New's Excessive Force Claim

Mr. New alleges that when he refused to give his palm prints and asked the officers to call his attorney, Captain Perry and Detective Wallace took hold of him in the public waiting area,

18

threw him to the ground, and dragged him to another room.  Mr. New stood in the room bent down and with his hands in his pockets to prevent the officers from taking his prints.  While in the room, Captain Perry pressed his knee against the middle of Mr. New's back and pulled back his shoulders.  At the same time, Detective Wallace tugged on Mr. New's arms to get his hands out of his pockets.  Once Detective Wallace got Mr. New's hands out of his pockets, Deputy Harvey attempted to pry his fingers apart to take the palm prints.  Mr. New continued to resist the officers' efforts, but denies doing anything that caused any of them to fall or strike anything in the room.  When their attempts were unsuccessful, Captain Perry and Detective Wallace slammed him to the ground, put their knees on his back, pulled his hands up behind him, and handcuffed him.  The officers then dragged Mr. New back to the area of the building that housed the jail. Deputy John Williams was also present when these events occurred, but according to Mr. New, did not exercise any physical force. Detective Wallace, however, recalls that all four officers were involved in restraining Mr. New.  Although Mr. New experienced pain as the result of this altercation, he did not require medical treatment, and his injuries had no effect on his ability to obtain or hold a job.

It is important to note, first, that the legality of the seizure of a suspect, and the alleged use of excessive force in accomplishing that seizure, are distinct inquiries.  In other words, even if police lack probable cause to arrest a suspect, no excessive force claim can be made if the amount of force used would have been reasonable had the arrest itself been lawful. "Thus, in a case where police effect an arrest without probable cause or a detention without reasonable suspicion, but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim

for unlawful arrest or detention but not an additional claim for excessive force." <u>Cortez v. McCauley</u>, 478 F.3d 1108, 1126 (10th Cir. 2007). Consequently, the Court must separately analyze whether the defendants may have used an unnecessary amount of force when they seized and attempted to search Mr. New, even if that search and seizure was itself improper.

In making an arrest, officers are entitled to use some measure of force, but may only employ as much force as is reasonably necessary. <u>See Graham</u>, 490 U.S. at 396. This standard is one of "objective reasonableness." <u>Id</u>. at 388. Application of this standard to a traditional arrest "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Id</u>. at 396.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Id</u>. The inquiry is an objective one. <u>Id</u>. at 397. The subjective intentions of the officer using force are irrelevant. "An officer's evil intentions will not make a Fourth Amendment claim out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." <u>Id</u>. There is no question that the defendants both seized Mr. New and used force to do so. Thus, the question is whether that force was reasonable under all of the circumstances (or, more accurately, since the case is before the Court by way of a summary judgment motion, whether reasonable minds could differ on that question).

The criminal charge against Mr. New which led to the request for the palm prints was burglary. However, at the time this

confrontation took place, the burglary charge had been dismissed. Although the defendants claim they were unaware of the dismissal, both Mr. New and his mother testified that they informed the officers that the charge had been dismissed. They even had a letter from Mr. New's attorney stating that the charge had been dismissed, but, according to Mrs. New, the officers refused to look at it. Thus, there was nothing about the criminal charge itself, active or dismissed, which created a situation where Mr. New had to be seized by force in order to protect the officers. Further, the defendants do not contend that Mr. New posed an immediate threat to them while he was in the sheriff's department. Clearly, if the use of force was justified here, it was related only to officers' belief that they had to use force to get Mr. New to submit to having his palm prints taken because he would not do so voluntarily.

Looking at the totality of the interaction between the officers and Mr. New, a reasonable person could find that the amount and type of force applied to Mr. New was unreasonable. Mr. New testified he was dragged to the lab against his will. When he got there, although Detective Wallace claims that Mr. New began slamming the fingerprint equipment around and eventually lunged at Captain Perry, Mr. New denies that he did either of these things. Rather, he testified that his only act of resistance was to try to keep his hands in his pockets in order to prevent the officers from taking his palm prints. The officers may have believed, albeit incorrectly, that Mr. New was not permitted to refuse giving the palm print sample, but that belief would have justified the use of only enough force to obtain the palm prints. Cf. Wysner v. Dallas County Sheriff's Dept., 1997 WL 10030 at *3-4 (N.D. Tex. Jan. 7, 1997) (officers were allowed to use reasonable force to compel suspect to comply with court order that he be fingerprinted). Mr. New's

allegations concerning his being dragged to the lab, kneed in the back, and slammed to the ground create a triable issue of fact concerning whether the force used was reasonably related to the goal of having his palms printed.

Having found that Mr. New has asserted a viable constitutional violation, the Court must determine whether the right alleged to have been violated was clearly established at the time of the defendants' conduct. Generally speaking, a suspect has a clearly-established right to be free from the use of excessive force. <u>Graham</u>, 490 U.S. at 399. The Supreme Court, however, has directed courts to analyze this prong "in light of the specific context of the case, not as a broad general proposition." <u>Saucier</u>, 533 U.S. at 201. Thus, the appropriate inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id</u>. at 202.

In this case, based on the plaintiffs' version of the facts, it should have been apparent to the officers involved that their actions, at least as Mr. New has described them, were objectively unreasonable. <u>See</u> <u>Hummel v. City of Carlisle</u>, 229 F.Supp.2d 839, 856 (S.D. Ohio 2002); <u>Meredith v. Erath</u>, 342 F.3d 1057, 1061 (9th Cir. 2003); <u>see also</u> <u>Burden v. Carroll</u>, 108 Fed. App'x 291, 293-94 (6th Cir. 2004). Reasonable officers would have been aware that this level of force could not be justified solely on the basis of the officers' perceived right to take Mr. New's palm prints, especially given the fact that he was not under arrest for a crime at the time the force was applied. <u>See, e.g.</u>, <u>St. John v. Hickey</u>, 411 F.3d 762, 772, 774 (6th Cir. 2005)(right of nonviolent arrestee to be free from unnecessary pain inflicted during arrest clearly established as of November 9, 2000). Thus, for purposes of summary judgment, the defendants are not entitled to qualified immunity on Mr. New's excessive force claim.

## E.  The First Amendment Claims

Finally, as noted above, Ms. New has asserted claims under the First Amendment.  The summary judgment motion does not address these claims.  Therefore, they will not be addressed in this Opinion and Order.

### V.

Based on the foregoing reasons, the Court determines that genuine issues of material fact exist which preclude summary judgment on all of the claims addressed by defendants' motion. The Court further determines that, based on the view of the facts most favorable to plaintiffs, defendants are not entitled to qualified immunity on any of those claims.  Accordingly, the defendants' motion for summary judgment (#16) is denied.


/s/ Terence P. Kemp
United States Magistrate Judge